RANDALL THOMAS NAVES, PRO SE
PO BOX 250
DRAPER, UTAH 84020-0250

RECEIVED CLERK
FEB 24 2022
U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH       CENTRAL DIVISION

| | |
|---|---|
| RANDALL THOMAS NAVES, PLAINTIFF<br><br>V<br><br>BRIAN NELSON, DIRECTOR, UTAH DEPARTMENT OF CORRECTIONS (UDOC), JOHN/JANE DOES 1-50, ALL IN THEIR OFFICIAL CAPACITIES, DEFENDANTS | CIVIL RIGHTS COMPLAINT UNDER TITLE 42 USC § 1983<br><br>CASE NO:<br><br>JUDGE:<br><br>Case: 2:22-cv-00131<br>Assigned To: Kimball, Dale A.<br>Assign. Date: 02/24/2022<br>Description: Naves v Nelson |

A. JURISDICTION

1. JURISDICTION IS PROPER IN THIS COURT ACCORDING TO TITLE 42 USC § 1983.

2. THE PLAINTIFF, RANDALL THOMAS NAVES, IS A CITIZEN OF UTAH, A STATE INMATE HELD BY THE UTAH DEPARTMENT OF CORRECTIONS (UDOC), AND HOUSED AT

3. DEFENDANT BRIAN NELSON, IS A CITIZEN OF UTAH, EMPLOYED BY THE STATE OF UTAH AS THE DIRECTOR OF THE UDOC. 14717 SOUTH MINUTEMAN DRIVE, DRAPER, UTAH 84020.

WAS THE DEFENDANT ACTING UNDER THE AUTHORITY OR COLOR OF STATE LAW AT THE TIME THESE CLAIMS OCCURRED: Yes.

IF YES, BRIEFLY EXPLAIN: AS THE DIRECTOR OF THE UDOC, DEFENDANT BRIAN NELSON REPRESENTS THE STATE OF UTAH. ALL POLICIES WITHIN THE UDOC ARE UNDER HIS CONTROL AND

DIRECTION, AND ARE TO BE IN COMPLIANCE WITH BOTH STATE AND FEDERAL LAWS.

4. DEFENDANTS JOHN/JANE DOE ARE CITIZENS OF UTAH, AND REPRESENT FORMER DIRECTORS OF THE UDOC AND OTHER EMPLOYEES THEREOF, RESPONSIBLE FOR THE PROMULGATION AND PERPETUATION OF THE POLICY REPLACING A LAW LIBRARY AT FACILITIES HOLDING UDOC INMATES, WITH CONTRACT ATTORNIES; AND THOSE RESPONSIBLE FOR THE HIRING OF THOSE CONTRACT ATTORNIES.

WERE THE DEFENDANTS ACTING UNDER AUTHORITY OR COLOR OF STATE LAW AT THE TIME THESE CLAIMS OCCURRED: Yes

IF YES BRIEFLY EXPLAIN: AS DIRECTORS OF THE UDOC, THESE INDIVIDUALS REPRESENTED THE STATE OF UTAH. ALL POLICIES WITHIN THE UDOC DURING THEIR TIMES IN OFFICE UNDER THEIR CONTROL AND DIRECTION, AND TO BE IN COMPLIANCE WITH BOTH STATE AND FEDERAL LAW.
THE REMAINING DEFENDANTS, WERE FOLLOWING THE DIRECTIONS PROVIDED BY THE DIRECTOR OF THE UDOC, THEIR SUPERIOR; AND ARE EXPECTED TO COMPLY WITH UDOC POLICIES AND PROCEDURES, AS WELL AS BOTH STATE AND FEDERAL LAW IN THE PERFORMANCE OF THEIR DUTIES.

B. NATURE OF CASE

1. WHY ARE YOU BRINGING THIS CASE TO COURT? PLEASE EXPLAIN THE CIRCUMSTANCES THAT LED TO THE PROBLEM.

- THE PLAINTIFF'S ACCESS TO THE COURTS HAS BEEN INTERFERED WITH, AS A MATTER OF POLICY AND PRACTICE BY THE UDOC AND ITS CONTRACT EMPLOYEES.

BACKGROUND AND EXPLANATION.

SINCE LONG BEFORE THE PLAINTIFF WAS HANDED OVER TO UDOC CUSTODY IN 1997, THE UDOC HAS PROVIDED CONTRACT ATTORNIES IN LIEU OF A LAW LIBRARY, TO ASSIST INMATES, PROVIDING GUIDANCE IN INITIAL PREPARATIONS REGARDING PRO SE APPEALS AND POST-CONVICTION RELIEF. HOWEVER, AS A MATTER OF PRACTICE, THE CONTRACT ATTORNIES PROVIDED BY THE UDOC, WITHHOLD INFORMATION AND MIS-ADVISE.

THE PLAINTIFF'S FIRST CONTACT WITH THE CONTRACT ATTORNIES, WAS IN FEBRUARY, 1998: THE PLAINTIFF ASKED THE ATTORNEY IF THERE WAS ANY WAY TO HAVE HIS CONSECUTIVE SENTENCES RUN

concurrently. While post-conviction relief was an option, the attorney remained mute on the subject. (This was ineffective assistance of counsel, on the part of the contract attorney. This same attorney/firm is still employed by the UDOC, as a contract attorney).

The plaintiff would first learn of post-conviction relief in 2008, from an inmate whose private attorney had provided him with the forms. The plaintiff, without funds or family in the state in which to assist him, was now able to obtain a post-conviction relief packet from the contract attorney (especially as the time to file for post-conviction relief had expired years before); nonetheless, within thirty (30) days of learning about post-conviction relief, and with the above explanation, the plaintiff submitted his post-conviction relief packet to the appropriate state court, only to have it rejected as untimely. As will be seen, this post-conviction relief case is still used against the plaintiff.

Both state and federal courts expect pro se litigants to follow the same rules of procedure as the bona fide attornies they are combatting. Over the years, the plaintiff has repeatedly requested copies of the state rules of procedure from the UDOC contract attornies: these requests have been as repeatedly refused, stating the rules are too thick (generally indicated by their index finger and thumb held inches apart).

Communications with the court is a two-way street: inmates need to be made aware of decisions made by the Utah Supreme Court. Sadly, this is not the case. In a decision handed down on April 1, 2003, the Utah Supreme Court officially dropped the "Corpus Delecti" standard, which had hundreds of years of precedent; replacing it with the "Trustworthiness" standard. Prior to this decision, some counties in Utah were using Corpus Delecti; others, such as the county the plaintiff was convicted in, the trustworthiness standard. Under the trustworthiness standard, convictions are guaranteed; no "evidence" is needed, merely an accusation, especially for sex offenses.

Notably, the Utah Supreme Court specifically stated: the "trustworthiness" standard could not be used retroactively (emphasis added). Thus, this decision impacted the plaintiff whose incarceration and placement into UDOC custody stem from a county that had been using the trustworthiness standard prior to this decision: four of his five charges had no Corpus Delecti, no physical evidence. The plaintiff is sure others in the UDOC system were impacted as well. This is a constitutionally protected liberty issue.

Also notable, is the fact the UDOC made no effort to inform inmates of this landmark decision. There was no word of mouth; there was nothing posted in the housing units, nor anywhere else an inmate might see it, and apply it to their case. (While preparing this case, the plaintiff asked their UDOC caseworker, how an inmate is supposed to learn of Utah Supreme Court decisions... the plaintiff was told the caseworker would have to

look into that).

In 2019, the plaintiff finally learned of the Utah Supreme Court decision mentioned in the three paragraphs above, but not from any UDOC source. The plaintiff was also in the middle of an appeal regarding his sentence; this decision impacted the underlying conviction. Pro se, the plaintiff filed motions to correct an illegal sentence (if the conviction is faulty, so is the sentence), and a motion for hearing to dismiss charges and vacate sentence, Exhibits A and B, with the sentencing court. It was through a motion to correct an illegal sentence, that the plaintiff had won the right to file an initial appeal twenty years after his conviction.

On 13 December, 2019, the plaintiff was brought before the Third Judicial Court judge who had granted him the right to appeal, regarding Exhibits A and B; and was told simply "You used the wrong mechanism". There was no mention from the court, what mechanism should have been used. Upon return to Uintah County Jail, the plaintiff did not seek the advise of the UDOC contract attorney who handled Uintah County Jail: this individual drives out from Salt Lake City, a three hour drive one-way; and this individual had previously advised the plaintiff to pursue a legal malpractice suit, that should never have been filed.

In 2020, having exhausted the state's appeals process regarding his sentencing, the plaintiff turned once again to post-conviction relief, Exhibit C, [internal exhibits B-G not included with this filing], as the completion of the appeals process, per statute, provides an opportunity for filing. This request for post-conviction relief was first met with a stay, then Exhibit D, the courts question about a possible time-bar, which included the state statute. Exhibit E is the plaintiff's response to the court's time-bar question. Exhibit F is that court's finding, rejecting the plaintiff's time-bar argument and his request for post-conviction relief, citing both the plaintiff's 2005 request, and reasons why Exhibits A and B had been rejected as well.

Exhibits G and H demonstrate the UDOC's willingness to assist inmates in seeking their release through the courts; their expectation that inmates have family or friends who can look things up for them. Thus, the need for an actual law library in lieu of contract attornies is shown; as well as the need to inform inmates of time limits involved, and landmark Utah Supreme Court decisions.

C. CAUSE OF ACTION

1. I ALLEGE THAT MY CONSTITUTIONAL RIGHTS, PRIVLEGES, OR IMMUNITIES HAVE BEEN VIOLATED, AND THAT THE FOLLOWING FACTS FORM THE BASIS FOR MY ALLEGATIONS.

A. (1) COUNT ONE: INTERFERENCE WITH ACCESS TO THE COURT.
   (2) SUPPORTING FACTS: HAD THE UDOC CONTRACT ATTORNEY WHO SPOKE WITH THE PLAINTIFF IN 1998, INFORMED THE PLAINTIFF OF POST-CONVICTION RELIEF UNDER THE UTAH RULES OF PROCEDURE, AT THAT TIME, THE PLAINTIFF WOULD HAVE HAD APPROXIMATELY EIGHT (8) MONTHS IN WHICH TO PERFECT AND FILE HIS MOTION.
   THE UDOC CONTRACT ATTORNEY'S SILENCE ON THIS MATTER IS NOW A CONTINUED SOURCE FOR THE PLAINTIFF'S INCARCERATION, AS NOTED IN EXHIBIT F, ORDER FROM THE THIRD JUDICIAL DISTRICT COURT OF UTAH, DATED 13 APRIL 2021.

B. (1) COUNT TWO: INTERFERENCE WITH ACCESS TO THE COURT.
   (2) SUPPORTING FACTS: WHEN THE UTAH SUPREME COURT PUBLISHED ITS 1 APRIL 2003 DECISION OF STATE V MAUCHLEY, 2003 UT 10, 67 P.3d 477 (MENTIONED IN EXHIBITS A, B, C, AND F), THE UDOC MADE NO EFFORT TO INFORM INMATES THEN IN ITS CUSTODY OF THIS DECISION IN ANY WAY, SHAPE, OR FORM. AS NOTED IN EXHIBIT F, INMATES HAD ONE YEAR FROM THE DATE OF THAT DECISION TO PETITION THE UTAH COURTS FOR PROTECTION AND REVERSAL OF THEIR CASES UNDER MAUCHLEY. THE UDOC'S POLICIES AND PROCEDURES DELIBERATELY PREVENTED INMATES FROM LEARNING ABOUT MAUCHLEY IN A TIMELY MANNER, THUS DEPRIVING THEM OF ACCESS TO AND FROM THE COURT.

C. (1) COUNT THREE: INTERFERENCE WITH ACCESS TO THE COURT.
   (2) AS NOTED IN EXHIBIT H, IT HAS BEEN LONGSTANDING UDOC POLICY TO PROVIDE CONTRACT ATTORNIES IN LIEU OF LAW LIBRARIES. THIS POLICY, WHILE APPEARING TO MEET BOTH STATE AND FEDERAL GUIDELINES, HAS HAD THE EFFECT, INTENTIONAL OR OTHERWISE, OF HAVING INMATES, SUCH AS THE PLAINTIFF, BEING MIS- OR UN- INFORMED OF MATTERS, RULES OF PROCEDURE, ET CETERA, THAT HAVE A BEARING ON INMATE'S PRO SE (INDIGENT) FILINGS; THE UDOC CONTRACT ATTORNIES BEING AN INDIGENT INMATE'S ONLY SOURCE OF INFORMATION. THUS THESE POLICIES, UNDER COLOR OF LAW, DEPRIVE INMATE'S OF THEIR CONSTITUTIONAL RIGHT OF ACCESS TO THE COURTS.

### D. INJURY

1. How have you been injured by the actions of the defendant(s)?

Through the actions and policies of the named defendant, along with his predecessors, by the UDOC's use of contract attornies who have withheld information, and state Supreme Court decisions not being made available (i.e. Mauchley); through no fault of his own, the plaintiff has had his pleadings rejected as not being filed in a timely manner.

It was possible through post-conviction relief in 1998, to turn thirty years of incarceration into fifteen.

It was possible under Mauchley in 2003, to turn fifteen or thirty years of incarceration into five.

Those opportunities were deprived me by the UDOC.

At the time I began my incarceration, 5 June, 1997, my children were three and eighteen months old. I have missed their first days of school, teaching them to ride bikes, their adventures in scouting, teaching them how to drive, high school graduations, and marriages. Because of my incarceration, both my sons are now completely estranged. I have been deprived of liberty for twenty-four-plus years; nineteen more than needed, for the charge where corpus delecti was available.

Life outside moves at the speed of electrons; while I have to deal with snail-mail... Being in prison is like being placed in a timecapsule, while you wait for someone to dig you up. You are surprised by the new world around you; your discoverers are surprised by the relic they have found -- I was thirtynine then -- I am sixtythree now.

Friends and family members have passed on; I have been beaten, threatened with death, and told to commit suicide; I have been raped. I have had to deal with prejudice, both from other inmates, and UDOC staff. All this could have been prevented, had the UDOC, through its contract attornies and other policies, provided the plaintiff with the information he needed, when he needed it.

There is a reason those who have been incarcerated for years, are classified as institutionalized. Having been put through the wringer, you are now cautious about meeting new people. -- Who is going to point an accusatory finger at you next?

Injury: How can you go through all this, without some sort of injury?

E. PREVIOUS LAWSUITS AND ADMINISTRATIVE RELIEF

1. HAVE YOU FILED OTHER LAWSUITS IN STATE OR FEDERAL COURT THAT DEAL WITH THE SAME FACTS THAT ARE INVOLVED IN THIS ACTION OR OTHERWISE RELATE TO THE CONDITIONS OF YOUR IMPRISONMENT? Yes.

THE PLAINTIFF, IN EACH OF HIS POST-CONVICTION RELIEF FILINGS (BOTH IN 2005, AND IN EXHIBIT C), HAS MENTIONED THE LACK OF ASSISTANCE BY THE CONTRACT ATTORNIES PROVIDED BY THE UDOC; AND HOW THIS LACK OF ASSISTANCE AND WITHHOLDING OF INFORMATION HAS IMPEDED ANY DUE DILIGENCE, OR THE FACT RAISED BY THE STATE, "THE PLAINTIFF SHOULD HAVE KNOWN".

THE PLAINTIFF HAS ALSO BEEN TOLD BY SEVERAL INDIVIDUALS, "THE UTAH SUPREME COURT FINDS THE ASSISTANCE OF THE CONTRACT ATTORNIES, PROVIDED BY THE UDOC TO INMATES IN LIEU OF A LAW LIBRARY, TO BE ADEQUATE..." IN THE PLAINTIFF'S OPINION, THE ASSISTANCE OF THE CONTRACT ATTORNIES TO INMATES OF THE UDOC, PROVIDES THE UTAH SUPREME COURT WITH A SINECURE.

2. HAVE YOU PREVIOUSLY SOUGHT FORMAL OR INFORMAL RELIEF FROM THE APPROPRIATE ADMINISTRATIVE OFFICIALS REGARDING THE ACTS COMPLAINED OF IN PART C? No.

F. RELIEF REQUESTED

1. I BELIEVE I AM ENTITLED TO THE FOLLOWING RELIEF:

A. REIMBURSEMENT FOR COURT FEES, COPIES, AND POSTAGE.

B. AS THE ACTIONS AND INACTIONS OF THE UDOC, THROUGH POLICY AND THE CONTRACT ATTORNIES HAVE COST THE PLAINTIFF NINETEEN YEARS AND COUNTING OF ADDITIONAL INCARCERATION, THE PLAINTIFF WISHES TO BE COMPENSATED FOR THESE AT THE MAXIMUM ALLOWABLE BY FEDERAL LAW, FOR EVERY DAY HELD BY THE UDOC, FROM 5 JUNE, 2002, UNTIL THE DAY HE IS RELEASED. THE PLAINTIFF BELIEVES THIS AMOUNT TO BE $2500.00/DAY, WHICH EQUATES TO TWENTY MILLION EIGHTY THOUSAND DOLLARS AT THE PLAINTIFF'S SCHEDULED RELEASE DATE OF 4 JUNE, 2027.

C. THE UDOC SHOULD DISCONTINUE ITS USE OF CONTRACT ATTORNIES, AND AGAIN PROVIDE LAW LIBRARIES. SAID LIBRARIES TO BE STAFFED WITH A NON-INMATE PARALEGAL, WHO CAN ASSIST INMATES WITH THEIR PRO SE FILINGS, INCLUDING ELECTRONIC FILING; AND CAN MONITOR DECISIONS BY THE UTAH COURT OF APPEALS, THE UTAH SUPREME COURT, AND HIGHER AUTHORITY, THAT MAY EFFECT OTHER CASES (i.e. MAUCHLEY), ENSURING DECISIONS ARE POSTED IN HOUSING UNITS. THIS LAW LIBRARY CAN BE LOCATED IN A CENTRAL LOCATION, MUCH LIKE MEDICAL IS IN UDOC

FACILITIES. PROVISIONS SHOULD BE MADE TO ADDRESS THE NEEDS OF THOSE INMATES HOUSED IN COUNTY JAILS. ADDRESSING A CONCERN FROM THE UDOC'S PERSPECTIVE, IF AN INMATE IS CAUGHT MISUSING THE LAW LIBRARY, I.E. USING IT TO SOCIALIZE, NOT LEGALIZE, THAT INMATE CAN BE ASKED TO LEAVE FOR THE REST OF THE DAY, BUT NOT BE SUSPENDED PERMANENTLY.

## DECLARATION UNDER PENALTY OF PERJURY

THE UNDERSIGNED DECLARES UNDER PENALTY OF PERJURY THAT HE IS THE PLAINTIFF IN THE ABOVE ACTION, THAT HE HAS READ THE COMPLAINT, AND THAT THE INFORMATION CONTAINED THEREIN IS TRUE AND CORRECT. 28 USC § 1746. 18 USC § 1621

RANDALL THOMAS NAVES

EXECUTED AT UTAH STATE PRISON, DRAPER, UTAH
ON 15 FEBRUARY, 2022