THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| | |
|---|---|
| RANDALL THOMAS NAVES,<br><br>Plaintiff,<br><br>v.<br><br>BRIAN NIELSON et al.,<br><br>Defendants. | **MEMORANDUM DECISION<br>AND DISMISSAL ORDER**<br><br>Case No. 2:22-CV-131 DAK<br><br>District Judge Dale A. Kimball |

Plaintiff Randall Thomas Naves, as a state prisoner held by Utah Department of Corrections (UDOC), filed this *pro se* civil-rights action, *see* 42 U.S.C.S. § 1983 (2025),[1] proceeding *in forma pauperis*, *see* 28 *id.* § 1915. (ECF Nos. 1, 6-7.)

After screening Plaintiff's complaint, the Court ordered him to cure its numerous deficiencies. (ECF Nos. 7, 22.) In that Cure Order, the Court gave specific guidance on the deficiencies, along with other details to help Plaintiff file an amended complaint with valid claims if possible. (ECF No. 22.) The Court further notified Plaintiff, "[T]he Court will perform its screening function and determine itself whether the amended complaint warrants service or dismissal." (*Id.* at 9.)

---

[1]The federal statute creating a "civil action for deprivation of rights" reads, in pertinent part:
> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . ., subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

42 U.S.C.S. § 1983 (2025).

Plaintiff has since filed the Amended Complaint (AC),[2] which retains many of the flaws warned against in the Cure Order. (ECF Nos. 22-23.) The AC names as defendants the following entities: "State of Utah in its three branches"; UDOC; and Utah Board of Pardons and Parole (UBOP). (ECF No. 23.) Plaintiff sets forth seven "counts" alleging federal constitutional violations. (*Id.* at 17-20.) He requests only injunctive relief. (*Id.* at 1, 21-22.)

Having now thoroughly screened and liberally construed[3] the AC under its statutory review function,[4] the Court dismisses this action.

---

[2] Plaintiff's AC tries to add two additional plaintiffs by listing them in the caption (Matthew L. Hunsaker and Alexander C. Lopez), including facts and claims applicable to them, and having them sign the AC. (ECF No. 23.) But, Plaintiff did not move for joinder of additional plaintiffs. And the Cure Order stated,

> The amended complaint shall not include any claims . . . outside the allegations of transactions and events contained in the Complaint, (ECF No. 7). The Court will not address any such new claims or outside allegations, which will be dismissed. If Plaintiff wishes to raise other claims and allegations, Plaintiff may do so only in a new complaint in a new case.

(ECF No. 22, at 9.) Plaintiff's attempt to add plaintiffs ignores this order. The Court therefore disregards them and all information related to them.

[3] The Court recognizes Plaintiff's *pro se* status, and so construes his pleadings liberally. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). Still, such liberal reading is meant merely to overlook technical formatting errors and other similar defects in Plaintiff's use of legal terminology and proper English. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). *Pro se* status does not excuse Plaintiff from the duty to meet various rules and procedures directing litigants and counsel or the mandates of substantive law; regarding these, the Court will treat Plaintiff with the same standards applicable to counsel licensed to practice law before this Court's bar. *See McNeil v. U.S.*, 508 U.S. 106, 113 (1993); *Ogden v. San Juan County*, 32 F.3d 452, 455 (10th Cir. 1994).

[4] The screening statute reads:

> (a) Screening.—The court shall review . . . a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) Grounds for dismissal.—On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint—
>> (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
>> (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C.S. § 1915A (2025).

# I. BACKGROUND

The following facts are drawn from a past case involving Plaintiff:

> In 1997 Mr. Naves was convicted in Utah state court on multiple felony charges involving the sexual abuse of a child, and one related misdemeanor charge. He was sentenced on October 17, 1997, to indeterminate sentences of imprisonment as follows: one-to-fifteen years on each of three second-degree felony charges; zero-to-five years on a third-degree felony charge; and twelve months on a Class A misdemeanor charge. Two of the one-to-fifteen year terms were to run concurrently, but the third was to run consecutively with the first two terms and consecutively with the other sentences.

*Naves v. Bigelow*, 565 F. App'x 678, 679 (10th Cir. 2014) (unpublished). Further,

> [o]n September 22, 2017, . . . Mr. Naves filed a motion in the underlying criminal case pursuant to *Manning v. State*, 2005 UT 61, 122 P.3d 628, and Utah Rule of Appellate Procedure 4(f). He asked for an order to reinstate the original time to appeal. That motion was granted, and Mr. Naves filed his direct appeal on May 3, 2018. The Utah Court of Appeals affirmed Mr. Naves's sentences in a decision issued in November 2020. *See State v. Naves*, 2020 UT App 156, 477 P.3d 28. Mr. Naves then sought to file a petition in the underlying criminal case for a writ of certiorari with the Utah Supreme Court. The Utah Supreme Court denied that petition. *State v. Naves*, 485 P.3d 944 (Utah 2021) (table).

*Naves v. State*, No. 200907511, slip op. at 1 (Utah 3d Dist. Ct. Apr. 13, 2021).

# II. ANALYSIS--FAILURE TO STATE A CLAIM

## A. Standard of Review for *Sua Sponte* Dismissals

Assessing a complaint for failure to state a claim upon which relief may be granted, this Court takes all well-pleaded factual assertions as true and regards them in a light most advantageous to the plaintiff. *Ridge at Red Hawk L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). Dismissal is appropriate when--though the facts are viewed in the plaintiff's favor--the plaintiff has not posed a "plausible" right to relief. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)*; Robbins v. Oklahoma*, 519 F.3d 1242, 1247-48 (10th Cir. 2008). "The

burden is on the plaintiff to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *Robbins*, 519 F.3d at 1247 (quoting *Twombly*, 550 U.S. at 556). When a civil-rights complaint contains "bare assertions," involving "nothing more than a 'formulaic recitation of the elements' of a constitutional . . . claim," the Court considers those assertions "conclusory and not entitled to" an assumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009) (quoting *Twombly*, 550 U.S. at 554-55). In other words, "the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Red Hawk*, 493 F.3d at 1177 (italics in original). "[T]he complaint must contain something more than 'unadorned, the-defendant-unlawfully-harmed-me accusation[s].'" *Eaves v. Kory*, No. 24-1048, 2024 U.S. App. LEXIS 12964, at *2-3 (10th Cir. May 30, 2024) (unpublished) (quoting *Iqbal*, 556 U.S. at 678). Also, "[f]acts, not conclusions, must be pleaded--'the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions,' including where a 'legal conclusion [is] couched as a factual allegation.'" *Renaud v. Ross*, No. 1:22-CV-212, 2023 U.S. Dist. LEXIS 19808, at *8 (D. Wy. Jan. 27, 2023) (alteration in original) (quoting *Iqbal*, 556 U.S. at 678).

As the Court reviews the sufficiency of Plaintiff's allegations, it painstakingly does so per individual defendant, per cause of action. *See Williams v. Utah Dep't of Corr.*, 928 F. 3d 1209, 1212 (10th Cir. 2019) (stating plaintiff must "explain[] which . . . prison-official defendants are liable for what improper conduct"). Indeed, § 1983 cases often include a list of defendants, like

> the government agency and a number of government actors sued in
> their individual capacities. . . . [I]t is particularly important in such
> circumstances that the complaint make clear exactly *who* is alleged
> to have done *what* to *whom*, to provide each individual with fair

notice as to the basis of the claims against him or her, as
distinguished from collective allegations against the state.

*Robbins*, 519 F.3d at 1249-50 (emphasis in original) (citing *Twombly*, 550 U.S. at 565 n.10).

When a complaint "fails to isolate the allegedly unconstitutional acts of each defendant," the

plaintiff has not carried the burden of providing "adequate notice as to the nature of the claims

against each." *Id.* at 1250. For instance, when a complaint uses "the collective term 'Defendants'

or a list of the defendants named individually but with no distinction as to what acts are

attributable to whom, it is impossible for any of these individuals to ascertain what particular

unconstitutional acts they are alleged to have committed." *Id.*[5]

The following sections analyze and dismiss each of Plaintiff's seven issues, one by one.

Any facts stated are taken from Plaintiff's allegations and viewed in a light most favorable to

him. They are taken as true for this Order only.

---

[5]Because the original complaint had not adequately "affirmatively link[ed] defendants to specific civil-rights violation[s]," the Cure Order contained a section marked, "Affirmative Link," under which Plaintiff was alerted that each defendant must be linked to the particular behavior that constitutes a legal claim. (ECF No. 22, at 2, 5.) This quote from a case was provided to Plaintiff so that he would understand his burden:

> [A] plaintiff who brings a constitutional claim under § 1983 can't obtain relief without first satisfying the personal-participation requirement. That is, the plaintiff must demonstrate the defendant "personally participated in the alleged constitutional violation" at issue. *Vasquez v. Davis*, 882 F.3d 1270, 1275 (10th Cir. 2018). Indeed, because § 1983 is a "vehicle[] for imposing personal liability on government officials, we have stressed the need for careful attention to particulars, especially in lawsuits involving multiple defendants." *Pahls v. Thomas*, 718 F.3d 1210, 1225 (10th Cir. 2013); *see also Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008) (explaining when plaintiff brings § 1983 claims against multiple defendants, "it is particularly important . . . that the complaint make clear exactly who is alleged to have done what to whom"); *Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 532-33 (10th Cir. 1998)) (holding district court's analysis of plaintiff's § 1983 claims was "infirm" when district court "lump[ed]" together plaintiff's claims against multiple defendants-- "despite the fact that each of the defendants had different powers and duties and took different actions with respect to [plaintiff]"--and "wholly failed to identify specific actions taken by particular defendants that could form the basis of [a constitutional] claim").

(ECF No. 22, at 5.) (quoting *Estate of Roemer v. Johnson*, 764 F. App'x 784, 790-91 (10th Cir. 2019) (unpublished)).

## B. "Count" One--Fifth Amendment Violations

The Fifth Amendment right at stake here is the protection "against self-incrimination."

(ECF No. 23, at 7.) Plaintiff says that in 1997 he "was given a similar choice" as that given to the

defendant in *State v. Stilling*, 856 P.2d 666 (Utah App. 1993), in which "the defendant . . .

maintained his innocence while pleading guilty . . . to receive a plea agreement [with] no first

degree felonies." (ECF No. 23, at 7.) As in *Stilling*, Plaintiff's "defense counsel failed to tell him

his plea had to be withdrawn in thirty days" and "he was not allowed to plead *nolo contendere*."

(*Id.*) Plaintiff's "defense counsel also failed to disclose to him that his sentences could be run

consecutively." (*Id.*) Plaintiff accepted the plea deal. (*Id.*) Plaintiff states, "This practice

continues today." (*Id.*)

Plaintiff characterizes the issue as follows:

> Since at least 1993 the Utah judicial system has repeatedly . . .
> violated defendants' Fifth Amendment right against self-
> incrimination, *nolo contendere* or no contest being seen as variants
> of this right--they did not state they were guilty. Coercion by any
> party to have the accused state they are guilty, in order to accept a
> plea bargain is also a violation of the Fifth Amendment. Here, state
> actors have conspired with deliberate indifference to the U.S.
> Constitution and the rights of the accused, to ensure convictions.

(ECF No. 23, at 17.)

Here is the related injunctive relief sought: "The Utah judicial system shall allow

defendants to plead *nolo contendere* or no contest while accepting a plea agreement, and it shall

be entered into the record as such." (*Id.* at 21.) And,

> Defendants in all criminal cases in Utah shall sign a statement
> acknowledging that . . . A. They have been informed that they can
> withdraw their pleas within thirty . . . days. B. They have been
> informed that the judge can run their sentences consecutively,
> should the judge so choose.

> These statements shall be on a separate document from the rest of
> the defendant's plea agreement, so they are not lost or buried in the
> rest of the verbiage.

(*Id.*)

### 1. Plaintiff's specific plea agreement

It is not entirely clear whether Plaintiff raises the circumstances around his own plea

agreement in 1997 for their potential to obtain relief for him now, or to give context to his

arguments supporting the general changes he requests in Utah's plea-agreement process on behalf

of the whole universe of individuals to be charged with crimes and navigate the plea-agreement

process in the future. (ECF No. 23, at 7, 21.) If he is seeking relief for himself, he has not spelled

out what that relief may be, except to say he seeks only injunctive remedies. But, to give Plaintiff

the benefit of the doubt, the Court addresses Plaintiff's possible assertions of unconstitutionality

as to his own plea agreement.

### a. Statute of limitations

As the Cure Order notified Plaintiff,

> "Utah's four-year residual statute of limitations . . . governs suits
> brought under section 1983." *Fratus v. DeLand*, 49 F.3d 673, 675
> (10th Cir. 1995). Plaintiff's claims accrued when "'facts that would
> support a cause of action are or should be apparent.'" *Id.* at 675
> (citation omitted). From the Complaint's face, some circumstances
> possibly occurred more than four years before this case was filed.

(ECF No. 22, at 7.)

The face of the complaint clearly indicates that any federal constitutional claims (under

this heading) accrued by October 17, 1997--the date upon which Plaintiff was sentenced. *See*

*Naves*, 565 F. App'x at 679. Plaintiff should have realized by October 17, 1997, at the latest, that

he "maintained his innocence while pleading guilty"; "defense counsel failed to tell him his plea

had to be withdrawn in thirty days"; "he was not allowed to plead *nolo contendere*"; and

"defense counsel . . . failed to disclose to him that his sentences could be run consecutively."

(ECF No. 23, at 7.) Meanwhile, Plaintiff did not file this action until March 7, 2022--more than

twenty years after the four-year statute of limitations expired. (ECF No. 7.) This is one basis

upon which to dismiss any civil-rights challenges to the constitutionality of Plaintiff's plea

agreement. *Jamerson v. Heimgartner*, 752 F. App'x. 557, 562 (10th Cir. Sept. 21, 2018)

(unpublished) ("A district court may dismiss a complaint *sua sponte* under § 1915A(b)(1) based

on an affirmative defense such as the statute of limitations when 'the defense is obvious from the

face of the complaint and no further factual record is required to be developed.'" (quoting *Fogle*

*v. Pierson*, 435 F.3d 1252, 1258 (10th Cir. 2006) (quotations omitted))).

### b. Habeas

The Cure Order also advised Plaintiff that "claims attacking the validity of conviction and

sentence, . . . should, if at all, be brought in habeas-corpus petition, not a civil-rights complaint."

(ECF No. 22, at 2.) This is based on elementary principles:

> Prisoners can generally file two kinds of actions related to their
> imprisonment: a habeas action and a civil rights action. The two
> actions bear different functions. Habeas actions are designed to
> challenge a conviction or sentence; civil rights actions are designed
> to obtain monetary, declaratory, or injunctive relief for past
> violations. *Preiser v. Rodriguez*, 411 U.S. 475, 494, 499 (1973).
> But when relief in a civil rights action would necessarily imply the
> invalidation of a conviction, the prisoner must generally obtain
> habeas relief (or some other remedy invalidating the conviction)
> before obtaining relief in a civil rights action. *See Heck v.*
> *Humphrey*, 512 U.S. 477, 486–87 (1994).

*Ricks v. Spivey*, No. 1:24-CV-1850, 2025 U.S. App. LEXIS 3727, at *1 (10th Cir. Feb. 19,

2025); *see also Graff v. Aberdeen Enterprizes, II, Inc.*, 65 F.4th 500, 520 n.26 (10th Cir. 2023)

("Although *Heck* involved a § 1983 suit for damages, the Supreme Court has subsequently made

clear that the policies underlying the *Heck* bar also apply to claims for equitable and declaratory relief." (citing *Wilkinson v. Dotson*, 544 U.S. 74, 80-81 (2005)).

Plaintiff potentially raises issues of violations of his rights (1) against self-incrimination, and (2) to effective assistance of counsel, when counsel did not tell him that (a) his sentences could be run consecutively," (b) "his plea had to be withdrawn in thirty days," and (c) "he was not allowed to plead *nolo contendere*." (ECF No. 23, at 7.) But based on the important distinctions discussed above between habeas and civil-rights actions, inasmuch as any of Plaintiff's claims attack the validity of his conviction and sentence, those claims are dismissed as failing to state a claim upon which relief may be granted, in this civil-rights action.

### 2. Other Utah criminal defendants' rights in plea agreements

Plaintiff's delineation of the issue here does not address his own circumstances, but instead generally calls out "the Utah judicial system" for "repeatedly . . . violat[ing] defendants' Fifth Amendment right against self-incrimination," regarding "coercion" in "*nolo contendere* or no contest" pleas." (*Id.* at 17.) Meanwhile, the way Plaintiff states his request for relief also does not ask for a remedy for himself but instead requests in the future that "the Utah judicial system . . . allow defendants to plead *nolo contendere* or no contest." (*Id.* at 21.) And, he requests that all Utah criminal defendants going forward shall sign "a separate document from the rest of the defendant's plea agreement" statements "acknowledging that . . . [t]hey have been informed that they can withdraw their pleas within thirty . . . days . . . [and] the judge can run their sentences consecutively, should the judge so choose." (*Id.*)

In the Cure Order, Plaintiff was notified of the following:

> Any allegations involving violative behavior against inmates or people, other than Plaintiff, are disregarded. Plaintiff lacks standing to bring claims on anyone else's behalf. *See Warth v. Seldin*, 422 U.S. 490, 498-99 (1975) ("As an aspect of

> justiciability, the standing question is whether the plaintiff has alleged such a personal stake in the outcome of the controversy as to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf.").

(EC No. 22, at 7.)

The United States Supreme Court further explains the general tenets of the standing doctrine as follows:

> [Federal court] authority under the Constitution is limited to resolving "Cases" or "Controversies." Art. III, §2. "The doctrine of standing," among others, "implements this" limit on our authority. *Carney v. Adams*, 592 U.S. 53, 58 (2020). Our jurisprudence has "established that the irreducible constitutional minimum of standing contains three elements" that a plaintiff must plead and--ultimately--prove. *Lujan* v. *Defenders of Wildlife*, 504 U. S. 555, 560 (1992). "First, the plaintiff must have suffered an 'injury in fact'" that is both "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Ibid.* (some internal quotation marks omitted). Second, the plaintiff 's injury must be "fairly traceable to the challenged action of the defendant," meaning that "there must be a causal connection between the injury and the conduct complained of." *Ibid.* (internal quotation marks and alterations omitted). "Third, it must be 'likely,' as opposed to merely 'speculative,' that the injury will be redressed by a favorable decision." *Id.*, at 561 (some internal quotation marks omitted).

*Dep't of Educ. v. Brown*, 600 U.S. 551, 56 (2023).

Plaintiff's styling of his issue and request for relief makes it clear that he does not have "such a personal stake in the outcome of the controversy as to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf." *Warth*, 422 U.S. at 498-99. He is instead asking for relief for future Utah criminal defendants who may have suffered violations of their plea-agreement rights in similar ways to the ways he suggests his rights were violated. And the relief he requests does not ask the Court to exercise its "remedial powers on his behalf," but instead on behalf of future Utah criminal defendants. *Id.* To

be sure, regarding the ways Plaintiff articulated the issue and relief request, he neither (a) suffered the "'injury in fact,'" and (b) experienced a "'causal connection,'" nor (c) showed that the "merely 'speculative,'" injuries to future Utah criminal defendants "will be redressed by a favorable decision." *Brown*, 600 U.S. at 561. Thus, Plaintiff has not shown that he has standing to raise these issues and request this remedy.

### 3. Conclusion

Having determined that Plaintiff's allegations about violations of his--and all Utah criminal defendants'--plea bargain rights fail to state a claim upon which relief may be granted, the Court dismisses "count one" from this action.

### C. "Counts" Two and Three--Separation-of-Powers-Clause Violations

Plaintiff attacks Utah's indeterminate sentencing scheme as unconstitutional. (ECF No. 23, at 8.) Plaintiff alleges here that--operating under statute--UBOP violates the Constitution as follows:

> [UBOP] function[s] in a manner analogous to that of a trial judge. They remove the possibility of parole, where a court has granted it, but giving inmates life without parole; they are part of the executive branch, not the judiciary. Their stated function is to commute sentences or parole; not to extend an inmate's time forever. . . . [UBOP] reviews unadjudicated matters, and holds inmates accountable for them, in the manner of a judge.

(*Id.* at 17.) He further asserts that "the Utah legislature has taken aspects into its own hands, by declaring all sentences are automatically for their maximum terms, unless shortened by [UBOP]." (*Id.* at 18.)

In Plaintiff's case, he was sentenced in 1997, to indeterminate sentences of imprisonment, in which two of of his one-to-fifteen-year terms were to run concurrently, while the third one-to-fifteen-year term was to run consecutively to the first two. *Naves*, 565 F. App'x at 679. After a

UBOP hearing in 2022, Plaintiff received notification that his imprisonment terms will expire on

June 4, 2027. (ECF No. 23, at 9.) This allegedly contradicts the "guideline matrix" of "84

months" with which he entered prison. (*Id.* at 10.)

Here is the related injunctive relief sought:

> Utah Code 77-18-111 (2023) shall be repealed and replaced with
> verbiage that allows judges to determine how long defendants
> should serve and/or instructs the Utah Board of Pardons to follow
> the sentencing guideline matrix *unless a court* has stipulated a
> minimum mandatory sentence, life without parole, or natural life.
> An inmate's institutional behavior *may* cause an inmate's upward
> departure from the matrix, such as numerous involvement in
> fights, continued involvement in illegal activity while incarcerated
> (selling/using drugs), et cetera. When an inmate receives three . . .
> consecutive write-ups for the same offense in one calendar year;
> or five . . . write-ups total in one calendar year, the individual
> involved receives a six-month upward departure. An inmate
> through their own behavior can add years to their own sentence.
> The Board of Pardons and Parole will still be free to commute
> (primarily shorten sentences), pardon (forgive), and parole
> (provide for conditional release); but they will not determine
> beyond the above guidelines how long a defendant/inmate is to
> serve, that role being left to the judiciary.

(*Id.* at 22 (emphasis in original.)

## 1. Constitutionality of Utah's indeterminate sentencing scheme

Here, Plaintiff attacks the constitutionality of Utah's indeterminate sentencing scheme.

(ECF No. 23, at 8.) The same challenges were soundly rejected by the Tenth Circuit. *See Straley*

*v. Utah Bd. of Pardons,* 582 F.3d 1208, 1213 (10th Cir. 2009), *cert. denied*, 559 U.S. 991 (2010)

(stating Utah's indeterminate sentencing scheme is not unconstitutional, including that it does not

violate separation-of-powers principles). And this Court soundly rejected the same challenges by

Plaintiff in his past habeas-corpus action in this Court. *Naves v. Bigelow*, No. 2:13-CV-379, ECF

6, at 2 (D. Utah. Nov. 13, 2013). Because Utah's indeterminate sentencing scheme has been

explicitly ruled constitutional by the Tenth Circuit, the Court denies any relief on the basis of this possible (habeas-style) claim.

## 2. Sentencing matrix

Plaintiff appears to assert a constitutional violation based on the fact that his imprisonment term will expire on June 4, 2027 (around thirty years after he entered prison), contradicting the "guideline matrix" he entered prison with, which was "84 months." (ECF No. 23, at 9-10.) The 84-month mark would have been a mark at which parole might be offered, not a shortening of Plaintiff's actual sentence, which included two 1-15 concurrent terms, with a third 1-15 term to be served consecutive to the first two. Thus, Plaintiff alleges that Defendants' unconstitutional treatment of him resulted in UBOP departing from state sentencing guidelines-- i.e., "the matrix"--in determining not to grant him parole.

However, as Plaintiff was notified in his past federal habeas-corpus action, *Naves*, No. 2:13-CV-379, ECF 6, at 5 (dismissing "Petitioner's . . . assertions . . . that he was entitled to an earlier release base on 'the matrix,'" citing *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979), and *Malek v. Haun*, 26 F.3d 1013, 1016 (10th Cir. 1994)), Plaintiff's allegations do not state a federal constitutional violation. After all, as *Greenholtz* says, "There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." *Greenholtz*, 442 U.S. at 7. "Parole is a privilege," not a constitutional right. *See Lustgarden v. Gunter*, 966 F.2d 552, 555 (10th Cir. 1992). Moreover, as *Malek* says, it is well established that the Utah parole statute does not create a liberty interest entitling prisoners to federal constitutional protection. *See Malek*, 26 F.3d at 1016. Because Plaintiff has no substantive liberty interest in parole under the Federal Constitution, he may not in this federal suit challenge the decision to deny him parole. *See Olim v. Wakinekona*, 461 U.S.

238, 250 (1983). As Plaintiff has been clearly informed in the past, Plaintiff has no federal right

to leave prison at any moment short of the latest point of his actual sentence. *Naves*, No. 2:13-

CV-379, ECF 6, at 5. The Court thus concludes that Plaintiff fails to state a claim.

### 3. Specific injunctive relief sought

Plaintiff seeks the repeal of a statute setting forth Utah's indeterminate sentencing scheme

and replacement of that statute with language of his choice. (ECF No. 23, at 22.) This is far

beyond the Court's own limits to act, based on comity and separation-of-powers principles. *See*

*Smentek v. Dart*, 683 F.3d 373, 375 (7th Cir. 2012) ("A standard definition of 'comity' is 'the

respect that sovereign nations (or quasi-sovereigns such as the states of the United States) owe

each other."); *Helfant v. Kugler*, 500 F.2d 1188, 1201 (3d Cir. 1974) (stating "generic definition

of 'comity'" is "mutual respect among equals" (cleaned up)); *cf. Woods v. Donald*, 575 U.S. 312,

316 (2015) (recognizing interests of federalism and comity "reflect a presumption [by federal

courts] that state courts know and follow the law") (cleaned up). The state legislature is the only

entity with the power to repeal a Utah state statute and replace it with other language. *See Borden*

*v. United States*, 593 U.S. 420, 448 (2021) (Thomas, J., concurring) ("Legislatures alone have

authority 'to prescribe general rules for the government of society.'" (quoting *Fletcher v. Peck*, 10

U.S. 87 (1810)); *cf. Bostock v. Clayton Cnty.*, 590 U.S. 644, 680-81 (2020) ("The place to make

new legislation, or address unwanted consequences of old legislation, lies in Congress.").

Finally, based on the standing principles discussed in section "II.B.2." above, Plaintiff is

ineligible to seek such relief. After all, as to his current imprisonment, he is not in a position

himself to benefit from any future changes to Utah's sentencing statute.

### D. "Count" Four--Eighth Amendment Violation

Plaintiff contends that the legislature's "declar[ation] that all sentences are automatically for their maximum terms" leads to "crowding in the prison system" resulting in inmates often being "sent to county jails within Utah . . ., instead of facilities run by the [UDOC]." (*Id.*) He says the county jails "are not designed for long-term incarceration, nor do they operate the same way that the prisons do," where inmates "enjoy the opportunity to have their own TVs, radios, hot pots . . . [and] free indigent supplies." (*Id.*) Plaintiff does not specify what injunctive relief he seeks here.

Still, referring back again to the standing concepts set forth in section "II.B.2." above (and that Plaintiff was told of in the Cure Order, (ECF No. 22, at 2, 7)), the Court sees no effort by Plaintiff to carry his burden. First, Plaintiff does not allege that he himself "suffered an injury in fact"; indeed, he says nothing at all about himself in the allegations. *Brown*, 600 U.S. at 561 (cleaned up). It stands to reason then that--second--when Plaintiff has not alleged his own injury, he has not "fairly trace[d]" an injury "to the challenged action of [any] defendant." *Id.* (cleaned up). And, third, lacking an allegation of injury to Plaintiff himself, there is no likelihood that an "injury [to Plaintiff] will be redressed by a favorable decision." *Id.* (cleaned up).

Moreover, in drafting his AC, Plaintiff did not observe other of the Court's direction in the Cure Order. (ECF No. 22.) For instance, the Cure Order stated, "To state a claim, a complaint must 'make clear exactly who is alleged to have done what to whom.'" (*Id.* at 3-4 (quoting *Stone*, 338 F. App'x at 759 (emphasis in original) (quoting *Robbins*, 519 F.3d at 1250)). The Cure Order further dictated about Plaintiff's drafting of his AC,

> Each cause of action, together with the facts and citations that
> directly support it, should be stated separately. Plaintiff should be
> as brief as possible while still using enough words to fully explain
> the "who," "what," "where," "when," and "why" of each claim.

> *Robbins*, 519 F.3d at 1248 ("The [*Bell Atlantic Corp. v.*] *Twombly*
> Court was particularly critical of complaints that 'mentioned no
> specific, time, place, or person involved in the alleged [claim].'
> [550 U.S. 544, 565] n.10 (2007). Given such a complaint, 'a
> defendant seeking to respond to plaintiff's conclusory allegations . .
> . would have little idea where to begin.' *Id.*").

(ECF No. 22, at 4.) Plaintiff's allegations here meet none of these requirements: no specific

names, dates, locations, and exact deprivations (particularly assigned to Plaintiff, in a sort of

overlap with the standing doctrine). His assertions simply do not adequately support elements of

a cause of action, though Plaintiff was given thorough guidance on what was needed.

Based on the AC's allegations, the Court concludes that Plaintiff lacks standing and

appropriately detailed facts to support his cause of action. As to "count" four, Plaintiff therefore

fails to state a claim upon which relief may be granted.

### E. "Counts" Five, Six, and Seven--Ineffective Assistance of Counsel and Interference with Court Access

These are Plaintiff's allegations of "ineffective assistance" and lack of court access:

> [A]s late as 2019, the contract attorneys provided to inmates within
> the UDOC system for the purpose of assisting these inmates in
> perfecting initial pleadings are failing to do so. Information can be
> deliberately withheld; inmates can be advised to pursue stale
> claims; inmates are often handed a form or packet to use as a
> template, with no other guidance. . . . The contract attorneys'
> actions, or lack of them . . . lead to inmates' pleadings being
> dismissed for failure to link parties, state legal claims, or clarify
> standing doctrine.

(ECF No. 23, at 19.) Further, Plaintiff asserts inmates were not told of *State v. Mauchley*, 2003

UT 10, nor are they told "of any state supreme court decisions, or how these may affect inmates'

own personal circumstances." (ECF No. 23, at 13, 19-20.)

More specifically, Plaintiff says he had interactions with the contract attorneys in 1998,

2019, and 2023. (*Id.* at 11-12.) For instance, in 2019, a contract attorney "advised [Plaintiff] to

pursue an ineffective assistance of counsel case against [his] defense attorney in [his] 1997 criminal conviction." (*Id.* at 12.) And, in 2023, Plaintiff met with contract attorney Angerhofer to consult about his complaint in this case, to "ensure that defendants were linked to specific claims, that legal claims were made, and that standing doctrine . . . [was] shown." (*Id.*) But Plaintiff experienced Angerhofer's help as deficient; i.e., "[a]fter a few seconds of reading, his response was, 'we did not have his blessing; and the only assistance he would provide was copying.'" (*Id.* at 13.) Meanwhile, Plaintiff did not find out about *Mauchley*'s purported "change from the *corpus delicti* standard to the *trustworthiness* standard . . . and how it affected him" until around 2018. (*Id.* at 13-14.)

Here is the related injunctive relief sought:

> 5. A method shall be developed within the Utah Department of Corrections that ensures that its contract attorneys actually provide effective assistance of counsel, including how to link defendants to specific actions, how to state legal claims, and how to clarify standing doctrine. Attorneys under contract who fail to provide these services shall have their contracts terminated, never to be reinstated.
> 6. A system shall be set up within the Utah Department of Corrections that allows inmates to file electronically with the courts; versus relying on snail-mail, and hoping documents don't get lost.
> 7. We would like a special window for those affected by the *Mauchley* decision of 2003, but never heard about in time, be opened up, so that we may apply *Mauchley* to our individual circumstances.

(*Id.* at 22.)

### 1. Ineffective assistance of counsel

The Tenth Circuit holds, "The Sixth Amendment right to effective assistance of counsel does not apply to civil litigation, such as [the plaintiff's] civil rights claims." *Birch v. City of Atchison*, 840 F. App'x 365, 366 (10th Cir. 2021) (unpublished) (citing *MacCuish v. United*

*States*, 844 F.2d 733, 735 (10th Cir. 1988) (collecting cases); *Nelson v. Boeing Co.*, 446 F.3d

1118, 1119 (10th Cir. 2006)). So, the contract attorneys could not have provided ineffective

assistance of counsel to Plaintiff even if they had been representing him. As it is, Plaintiff's

allegations about UDOC's "contract attorneys" indicate that they help inmates prepare their own

initial pleadings. (ECF No. 23, at 19.) Thus, they were not his representatives in any of his legal

actions, including his criminal case, which is the only one in which he may have had a right to

counsel. Still, if Plaintiff believes he received ineffective assistance of counsel in his criminal

case, that is a claim to be brought only within the criminal case itself or in a post-conviction

petition. Plaintiff has thus not alleged a claim upon which relief may be granted in raising

ineffective assistance of counsel in this civil-rights action.

### 2. Contract attorneys are not state actors

Another fatal flaw of "Counts" Five, Six, and Seven is that Plaintiff has not affirmatively

linked his allegations to any defendant. *See Bennett*, 545 F.2d at 1262-63 (stating personal

participation of each named defendant is essential allegation in civil-rights action); *see also*

*Stone*, 338 F. App'x at 759 ("To state a claim, a complaint must 'make clear exactly *who* is

alleged to have done *what* to *whom*.'" (emphasis in original) (quoting *Robbins*, 519 F.3d at

1250)).

But even if Plaintiff had named the very contract attorneys whom he faults with violating

his constitutional rights, they are not culpable under federal civil-rights law because, as private

attorneys contracted by the UDOC to provide initial legal services for state prisoners, they are

not "state actors."  First, though lawyers are generally licensed by states, "they are not officials of

government by virtue of being lawyers." *In re Griffiths*, 413 U.S. 717, 729 (1973). Further,

precedent holds that private contractors' acts do not become governmental acts under § 1983 by

reason of their significant or even total involvement in executing the terms of public contracts. *Rendell-Baker v. Kohn*, 457 U.S. 830, 841 (1982). "[The Fourteenth] Amendment erects no shield against merely private conduct, however discriminatory or wrongful." *Shelly v. Kramer*, 334 U.S. 1, 14 (1948).

An earlier case decided in this Court is persuasive: *Smith v. Freestone*, Case No. 2:97-CV-944. A Report and Recommendation adopted in a dismissal order by the district-court judge, states, "Prison contract attorneys do not work under color of state law for purposes of § 1983." *See id*., slip op. at 3 (D. Utah Aug. 20, 1998). The dismissal was affirmed by the Tenth Circuit, ruling that attorneys contracting with the state to provide legal help to inmates were not acting under "color of state law" in performing those duties. *Smith v. Freestone*, No. 99-4005, 1999 U.S. App. LEXIS 16766, at *2 (10th Cir. July 20,1999); *cf. Polk County v Dodson*, 454 U.S. 312, 321 (1981) ("[A] public defender is not amenable to administrative direction in the same sense as other employees of the State.").

A good final point: Like public defenders, UDOC's contract attorneys work under canons of professional responsibility that govern their exercise of independent judgment on behalf of those seeking their expertise. "[T]he canons of professional ethics impose limits on permissible advocacy." *Dodson*, 454 U.S. at 323. In other words, every lawyer, whether privately retained or publicly appointed, is charged to avoid clogging the courts with frivolous claims. *See id*. So, for instance, when contract attorney Angerhofer, "[a]fter a few second of reading" Plaintiff's proposed legal work, responded that Plaintiff "'did not have his blessing; and the only assistance he would provide was copying,'" (ECF No. 23, at 13), this may be because Angerhofer was observing his duty to avoid advancing frivolous claims.

Consequently, if Plaintiff is trying to bring civil-rights claims against UDOC's contract attorneys here, he has failed to state a claim upon which relief may be granted.

### 3. Legal access

The Cure Order gave Plaintiff the following information on filing a valid legal access claim:

> It is true that prison inmates "have a constitutional right to 'adequate, effective, and meaningful' access to the courts and that the states have 'affirmative obligations' to assure all inmates such access." *Ramos v. Lamm*, 639 F.2d 559, 583 (10th Cir. 1980). In *Bounds v. Smith*, 430 U.S. 817 (1977), the Supreme Court expounded on the obligation to provide legal access by stating "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Id.* at 828 (footnote omitted & emphasis added). However, to successfully assert a constitutional claim for denial of access to courts, a plaintiff must allege not only inadequacy of the library or legal assistance provided but also "that the denial of legal resources hindered [the plaintiff's] efforts to pursue a nonfrivolous claim." *Penrod v. Zavaras*, 84 F.3d 1399, 1403 (10th Cir. 1996) (emphasis added); *Carper v. Deland*, 54 F.3d 613, 616 (10th Cir. 1995). In other words, a plaintiff must show that "denial or delay of access to the court prejudiced him in pursuing litigation." *Treff v. Galetka*, 74 F.3d 191, 194 (10th Cir. 1996). Moreover, the non-frivolous litigation involved must be "habeas corpus or civil rights actions regarding current confinement." *Carper*, 54 F.3d at 616; *accord Lewis v. Casey*, 518 U.S. 343, 353-55 (1996).

(ECF No. 22, at 6-7.)

In this section, the Court treats only the allegations involving Plaintiff personally. (After all, as discussed elsewhere in this Order, standing principles require that he have a personal stake in the claim.) For instance, in 2019, a contract attorney "advised [Plaintiff] to pursue an ineffective assistance of counsel case against [his] defense attorney in [his] 1997 criminal conviction." (ECF No. 23, at 12.) And, in 2023, Plaintiff met with contract attorney Angerhofer

to consult about his complaint in this case, to "ensure that defendants were linked to specific

claims, that legal claims were made, and that standing doctrine . . . [was] shown," but after

starting to read Plaintiff's pleading, Angerhofer said that "'the only assistance he would provide

was copying.'" (*Id.* at 13.)

However, even assuming that Plaintiff sufficiently alleged "the inadequacy of the . . .

legal assistance provided" by UDOC's contract attorneys, he was also required to allege facts

supporting the legal-access claim's element "that the denial of legal resources hindered [the

plaintiff's] efforts to pursue a nonfrivolous claim." *Penrod*, 84 F.3d at 1403; *Carper*, 54 F.3d at

616. Indeed, Plaintiff must allege facts supporting his assertion that "denial or delay of access to

the court prejudiced him in pursuing litigation." *Treff*, 74 F.3d at 194 (10th Cir. 1996).

Yet Plaintiff has not done this. His allegation about a contract attorney's advice that he

should bring an ineffective-assistance claim in his criminal case omits information about whether

he followed through and, if so, whether the claim was successful. (ECF No. 23, at 12.) And his

contentions that he was thwarted by contract attorney Angerhofer from bringing a nonfrivolous

case here is undermined by the fact that every defendant and claim in this action has been

thoroughly rejected by the Court in this Order, after two versions of the complaint and thorough

guidance provided by the Court, in addition to information received by Plaintiff in other of his

cases before this Court in which some similar claims were denied. In other words, plaintiff has

not met his obligation to aver that "denial or delay of access to the court prejudiced him in

pursuing litigation." *Treff*, 74 F.3d at 194. It appears Angerhofer gave Plaintiff solid advice when

he withdrew support for this case.

Plaintiff has therefore not stated a claim upon which relief may be granted as to his

possible legal-access cause of action here.

### 4. Standing

Aside from Plaintiff's specific allegations about his 2019 and 2023 experiences with UDOC contract attorneys, the remainder of his assertions of inadequate legal access are general to the UDOC system--i.e., they say "[t]he contract attorneys' actions, or lack of them . . . lead to inmates' pleadings being dismissed for failure to link parties, state legal claims, or clarify standing doctrine. (ECF No. 23, at 19.) Meanwhile, the injunctive relief sought by Plaintiff is equally general and not tailored to his particular needs regarding a specific set of allegations involving a discrete instance in which his very own legal-access rights were breached. For example, he wants this Court to order UDOC to (a) develop a method to provide information to inmates on linking actions to defendants, stating claims, and standing tenets, with the consequence that noncompliant contract attorneys will be terminated and forever barred from future contracts; and (b) set up electronic filing for inmates. (*Id.* at 22.)

Again, heeding the standing precepts found above in section "II.B.2." (and that Plaintiff was told of in the Cure Order, (ECF No. 22, at 2, 7)), the Court detects no attempt by Plaintiff to meet his burden. First, as to his general allegations and requests for remedies, Plaintiff does not allege that he himself "suffered an injury in fact"; in fact, he says nothing at all about himself in the allegations and remedy request. *Brown*, 600 U.S. at 561 (cleaned up). It makes sense then that--second--when Plaintiff has not alleged his own injury, he has not "fairly trace[d]" his injury "to the challenged action of [any] defendant." *Id.* (cleaned up). And, third, lacking an allegation of injury to Plaintiff himself, there is no likelihood that an "injury [to Plaintiff] will be redressed by a favorable decision." *Id.* (cleaned up).

### 5. *Mauchley*

Plaintiff states, "Inmates held by the UDC need to be made aware of decisions made by the Utah Supreme Court . . . . Sadly, this does not happen." (ECF No. 23, at 13.) In 2020, Plaintiff questioned a UDOC caseworker about how to find out about Utah Supreme Court decisions because he "had recently learned of *State v. Mauchley*, 2003 UT 10, the change from the *corpus delecti* standard to the *trustworthiness* standard in the State of Utah; and how it affected him." (*Id.* (emphasis in original).) Plaintiff says that, before *Mauchley*, "some counties in Utah were using the *corpus delicti* standard; others, such as Davis, Cache, and Salt Lake Counties, where . . . Naves w[as] convicted, were using the *trustworthiness* standard." (*Id.* (emphasis in original).) But, Plaintiff asserts, "*Mauchley* stated that the trustworthiness standard could not be applied prior to 1 April, 2023." (*Id.*) And Plaintiff had not "heard about *Mauchley* at any time between 2003-2004." (*Id.* at 13-14.) Meanwhile Plaintiff had been "arrested and convicted prior to 1 April, 2003, without any physical proof or evidence, other than allegations." (*Id.* at 14.) Plaintiff contends "there was a one-year statute of limitations to have applied for *Mauchley* protections" and he "would have applied, had [h]e known about them in time; however, he did "not learn about *Mauchley* until 2018+." (*Id.*)

As remedies for UDOC's failure to tell him and other inmates of Utah Supreme Court decisions, he requests the following injunctive relief: (a) UDOC "shall find some means of keeping inmates informed of decisions made by the Utah Supreme Court that *may* impact more than the individual involved in that decision." (*Id.* at 22 (emphasis in original).) And, (b) that the Court create "a special window for those affected by the *Mauchley* decision of 2003, but never heard about in time, . . . so that [they] may apply *Mauchley* to [their] individual circumstances." (*Id.*)

Here, for one thing, Plaintiff seems to be questioning the very basis of his conviction. As one of his state-court arguments says, "In Naves' mind, his case should never have made it to the sentencing phase, based on *Mauchley*." (ECF No. 7-5, at 3.)

But, again, as the Cure Order indicated, "[C]laims attacking the validity of conviction and sentenc[ing], . . . should, if at all, be brought in habeas-corpus petition, not a civil-rights complaint." (ECF No. 22, at 2.) Further, as stated above in section II.B.1.b., "when relief in a civil rights action would necessarily imply the invalidation of a conviction, the prisoner must generally obtain habeas relief (or some other remedy invalidating the conviction) before obtaining relief in a civil rights action." *Ricks*, 2025 U.S. App. LEXIS 3727, at *1 (citing *Heck*, 512 U.S. at 486–87).[6] Any "special window" must therefore be found, if at all, in a habeas action, and is not attainable in this civil-rights case.

---

[6] The federal habeas statute contains the potential to create necessary "windows" outside the normal one-year period of limitation, under certain circumstances. 28 U.S.C.S. § 2244(d) (2025). Plaintiff may review this section for further information:

> **(1)** A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—
>
> **(A)** the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> **(B)** the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> **(C)** the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> **(D)** the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> **(2)** The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

*Id.*

Finally, referring once more to the standing basics from section "II.B.2.," it is clear that--as to Plaintiff's legal-access claims here--the allegations that Plaintiff makes and relief he seeks, on behalf of the overall state inmate population, are inappropriate.

In sum, based on the important distinctions discussed above between habeas and civil-rights actions and standing standards, to the extent Plaintiff's claims attack the validity of his conviction and sentence, or seek relief for other individuals, those claims are dismissed as failing to state a claim upon which relief may be granted, in this civil-rights action.

### III. ORDER

For failure to state a claim upon which relief may be granted, **IT IS ORDERED** as follows:

**(1)** Plaintiff's Amended Complaint, (ECF No. 23), is **DISMISSED**, *See* 28 U.S.C.S. § 1915(e)(2)(B) (2025). Two iterations of the complaint, (ECF Nos. 7, 23), and a full round of comprehensive guidance on curing deficiencies, (ECF No. 22), have not resulted in an improved pleading. Neither liberal interpretation of Plaintiff's claims nor further opportunity to amend would lead to a different result.

**(2)** Any issues dismissed on the basis of standing are dismissed without prejudice. Any other dismissals are done with prejudice.

DATED this 24th day of March 2025.

BY THE COURT:

JUDGE DALE A. KIMBALL
United States District Court